UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 6:23-CR-00090-1 |
| VERSUS | JUDGE ROBERT R. SUMMERHAYS |
| GABRIEL HAWTHORNE | MAGISTRATE JUDGE DAVID J. AYO |

**RULING and ORDER**

The present matter before the Court is defendant Gabriel Hawthorne's Rule 33(b)(1) Motion for a New Trial. [ECF No. 134] The government has filed a memorandum in opposition to the motion [ECF No. 138], and Hawthorne has filed a reply. [ECF No. 139] After reviewing the motion and briefing, the record, and the applicable law, the motion is DENIED.

**I.**
**BACKGROUND**

Gabriel Hawthorne, Andrea Mitchell, and Frederick Thornton were charged with various drug conspiracy and distribution crimes in a six-count indictment dated April 19, 2023. Hawthorne was charged with conspiracy to distribute and possess with intent to distribute heroin and fentanyl, under 21 U.S.C. § 846, and possession with intent to distribute fentanyl, under 21 U.S.C. § 841(a)(1).[1] Mitchell was also charged in those same counts, as well as unlawful use of a communication facility, under 21 U.S.C. § 843(b).[2] All parties are represented by counsel.

On July 19, 2023, the government obtained a Superseding Indictment against the same three defendants, asserting substantially similar charges. Hawthorne and Mitchell were charged with the same violations charged in the original indictment, except that they were accused of trafficking in fentanyl only.[3]

---

[1] ECF No. 1.
[2] *Id.*
[3] ECF No. 55.

1

On September 26, 2023, Mitchell executed a plea agreement with the government.[4] Under the terms of that agreement, Mitchell pled guilty to unlawful use of a communication facility, and the government agreed to dismiss the remaining counts of the Superseding Indictment after Mitchell's sentencing.[5]

As a condition of her plea agreement, Mitchell entered into a stipulation that provided the factual basis for her guilty plea.[6] In that regard, Mitchell stipulated to the following facts:

- On March 8, 2022, Mitchell arranged to meet an undercover officer to sell one half ounce of heroin to him. Prior to conducting the sale, Mitchell went to a restaurant called ZZ's Kitchen[7] and retrieved from Gabriel Hawthorne the drugs she went on to sell to the officer.

- After completing the sale, Mitchell returned to ZZ's Kitchen and paid Hawthorne his share of proceeds from the sale. Testing revealed that the substance Mitchell sold to the officer consisted mostly, if not entirely, of fentanyl.

- On March 24, 2022, Mitchell arranged another sale to the same officer. Mitchell explained that this time, she only had access to "mixed" heroin, and that Hawthorne was the person who mixed it. Again, the controlled substance the officer received was mostly, if not entirely, fentanyl. On April 1, 2022, Mitchell conducted another sale of drugs to the same officer, and again retrieved the drugs from Hawthorne prior to the sale.

- On April 27, 2022, Mitchell arranged another sale to the same officer, and indicated that Hawthorne would deliver the drugs to her before the sale. She again retrieved the drugs she was to sell from ZZ's Kitchen, at Hawthorne's direction.

- The April 27 sale was not completed because Mitchell was stopped and questioned by officers of the Drug Enforcement Agency (DEA). After questioning, the DEA officers provided Mitchell funds with which to pay Hawthorne for the drugs she had intended to sell to the undercover officer.

- After Mitchell was released, she traveled to ZZ's Kitchen, met with Hawthorne, and gave him the DEA-provided funds. Mitchell separately stipulated that she had reached an agreement with Hawthorne and Thornton to distribute and possess with intent to distribute fentanyl, that she knew of the unlawful purpose of the

---

[4] ECF No. 95.
[5] *Id.* at 1-2.
[6] ECF No. 95-2.
[7] At trial, undisputed evidence was adduced that the business ZZ's Kitchen is registered to and owned by Gabriel Hawthorne, and that Hawthorne and his mother both worked at the restaurant at all relevant times.

agreement, and that she had conducted at least ten (10) narcotics transactions in concert with Hawthorne in the "recent past" leading up to her plea agreement.[8]

The Court held a hearing on Mitchell's change of plea on October 17, 2023. During that hearing, Mitchell stated on the record that the factual stipulation was correct.[9]

Hawthorne was tried before a jury on November 13-16, 2023.[10] During trial, the government advised the Court that Mitchell could not be located, and that Mitchell feared Hawthorne and other members of the conspiracy. While counsel for the government had been in regular contact with Mitchell prior to trial and intended to call her as a witness, Mitchell ceased communicating with them shortly before trial began. Mitchell did not attend Hawthorne's trial. Hawthorne was ultimately convicted on both counts.[11]

Hawthorne then moved for a new trial under Federal Rule of Criminal Procedure 33(b)(1) on the grounds of newly discovered evidence.[12] This new evidence consists of an affidavit purportedly executed by Mitchell on November 17, 2023, the day after Hawthorne's trial ("the Affidavit"). In the Affidavit, Mitchell avers that "at no point in time [did] I ever exchange [drugs] or any kind of illegal activity with [Gabriel Hawthorne]" and "I was also [threatened] by the [District Attorney] to testify and that's why I didn't go to court."[13] These statements contradict the stipulated facts that Mitchell affirmed, under oath, were true and correct at her plea hearing.

## II.
## APPLICABLE LAW

Federal Rule of Criminal Procedure 33 allows the court to "vacate any judgment and grant a new trial if the interest of justice so requires," including on the grounds of newly discovered

---

[8] ECF No. 95-2.
[9] ECF No. 93.
[10] Thornton also executed a plea agreement, which was accepted prior to trial. ECF Nos. 110-11.
[11] ECF No. 129.
[12] ECF No. 134.
[13] ECF No. 134-4.

evidence.[14] However, motions for new trial are "disfavored and reviewed with great caution,"[15] and should only be granted in "rare"[16] or "exceptional"[17] circumstances in which "there would be a miscarriage of justice or the weight of evidence preponderates against the verdict."[18] As the Fifth Circuit has explained, "the primary purpose of the newly discovered evidence rule is to afford relief when, despite the fair conduct of the trial … facts unknown at the trial make clear that substantial justice was not done."[19] Hawthorne bears the burden of proving that he is entitled to a new trial.[20]

Courts in the Fifth Circuit use the five-factor *Berry* test to determine whether evidence is newly discovered and justifies a new trial.[21] The factors are:

> (1) the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) the failure to detect the evidence was not due to a lack of diligence by the defendant; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence if introduced at a new trial would probably produce an acquittal.[22]

"If the defendant fails to demonstrate any one of these factors, the motion for new trial should be denied."[23]

Moreover, "recanting affidavits and witnesses are viewed with extreme suspicion by the courts."[24] "[A] federal district judge, faced with a motion for a new trial predicated upon the

---

[14] Fed. R. Crim. P. 33.
[15] *United States v. Turner*, 674 F.3d 420, 429 (5th Cir. 2012)(quoting *United States v. Wall*, 389 F.3d 457, 465 (5th Cir. 2004)).
[16] *United States v. O'Keefe*, 128 F.3d 885, 898 (5th Cir. 1997).
[17] *Wall*, 389 F.3d at 465.
[18] *United States v. Wright*, 634 F.3d 770, 775 (5th Cir. 2011).
[19] *United States v. Medina*, 118 F.3d 371, 373 (5th Cir. 1997)(quoting *United States v. Ugalde*, 861 F.2d 802, 807-09 (5th Cir.1988), *cert. denied*, 490 U.S. 1097, 109 S.Ct. 2447, 104 L.Ed.2d 1002 (1989))(internal quotations omitted).
[20] *United States v. Legendre*, No. CR 21-51, 2023 WL 8355553, at *4 (E.D. La. Dec. 1, 2023)(citing *United States v. Soto-Silva*, 129 F.3d 340, 343 (5th Cir. 1997)).
[21] *United States v. Bolton*, No. 21-60425, 2022 WL 965089, at *1 (5th Cir. Mar. 30, 2022)(quoting *Wall*, 389 F.3d at 467).
[22] *Id.*
[23] *Wall*, 389 F.3d at 467 (citing *United States v. Freeman*, 77 F.3d 812, 817 (5th Cir.1996)).
[24] *Neal v. Vannoy*, 78 F.4th 775, 788–89 (5th Cir. 2023)(quoting *Spence v. Johnson*, 80 F.3d 989, 1003 (5th Cir. 1996)).

contention that a witness has provided a recanting affidavit, must compare the trial record with the affidavit of recantation and determine for himself whether the affidavit is worthy of belief."[25]

## III.
### DISCUSSION

**A. The Parties' Arguments.**

Hawthorne argues that the Affidavit satisfies all five *Berry* factors and that he should, therefore, be granted a new trial. First, he argues that Mitchell's allegedly exculpatory statements that Hawthorne was not involved in any drug trafficking activity were unknown to him prior to trial because he "was made to believe that Andrea Mitchell would have testified at trial to corroborate the statements she allegedly provided to the police," and he "had no reason to believe [Mitchell] never actually made those statements" before he discovered the Affidavit's contents.[26] Because Mitchell did not appear at trial and testify, Hawthorne was unable to cross-examine her, so the defense was never able to determine whether Mitchell actually made the inculpatory statements the government asserts she did.[27] As to the second *Berry* factor, Hawthorne argues that "the failure to detect" this exculpatory evidence was not due to a lack of diligence because (1) Mitchell did not testify at trial as planned; (2) Hawthorne relied on the government's statements that Mitchell feared retaliation from Hawthorne because she planned to testify against him; and (3) Hawthorne's counsel reached out to Mitchell's attorney to inquire about Mitchell's testimony but got no response.[28] As to the third and fourth *Berry* factors, Hawthorne argues the contents of the Affidavit are material and not "cumulative or impeaching" because they "completely exonerate" him.[29] Specifically, he argues that Mitchell's statements in the Affidavit show that the

---

[25] *Spence*, 80 F.3d at 1003 (citing *May v. Collins*, 955 F.2d 299, 314 (5th Cir. 1992)(superseded on other grounds).
[26] ECF No. 134-2 at 3.
[27] *Id.*
[28] *Id.* at 3-4.
[29] *Id.* at 4.

evidence introduced at trial pertaining to Hawthorne does not reflect that Hawthorne engaged in "drug activity or any illegal activity."[30] Finally, as to the fifth *Berry* factor, Hawthorne argues that if Mitchell appeared at a second trial and testified in line with the Affidavit, he would be acquitted. In this regard, Hawthorne cites *United States v. Montilla-Rivera*[31] to show that exculpatory affidavits from non-testifying codefendants justify a new trial if they are newly discovered and offer material testimony that is both not inherently implausible and could lead to a different outcome if accepted by the jury.[32] He argues that such is the case with the Affidavit here.

The government disputes that the Affidavit supports a new trial for Hawthorne. The government points to cases holding that when a defendant who does not testify at trial later offers testimony exculpating a codefendant—a common occurrence—that evidence is not "newly discovered."[33] Additionally, the government points out that Mitchell was not unavailable during trial; while she chose not to comply with the government's request that she testify, Hawthorne also could have asked her to testify, or could have asked that she be placed under subpoena.[34] The government also argues that *Montilla-Rivera* is distinguishable[35] and that the Affidavit is "inherently suspect."[36]

### B. The Affidavit Does Not Satisfy the *Berry* Test.

After reviewing the record, the Affidavit, and the parties' arguments, the Court finds that the Affidavit does not satisfy all of the *Berry* factors and, therefore, does not support the relief requested in Hawthorne's motion. First, Hawthorne has not established that the Affidavit satisfies the first two *Berry* factors—that the evidence is "newly discovered and was unknown to the

---

[30] *Id.*
[31] 115 F.3d 1060 (1st Cir. 1997).
[32] *Id.*
[33] ECF No. 138 at 2-3.
[34] *Id.* at 1, 5.
[35] *Id.* at 6-7.
[36] ECF No. 138 at 5.

defendant at the time of trial," and "the failure to detect the evidence was not due to a lack of diligence by the defendant." Hawthorn knew that the government planned to call Mitchell as a witness. The government ultimately decided not to call Mitchell as a witness because she ceased contact with the government and could not be located. However, Hawthorne has not shown why he could not have discovered Mitchell's exculpatory evidence prior to trial and presented that evidence at trial, especially given that he was ultimately able to obtain the Affidavit from Mitchell the day after trial.

Furthermore, as a general matter the Fifth Circuit does not consider such post-trial affidavits "newly discovered" evidence for purposes of Rule 33.[37] In *United States v. Metz*, the defendant moved to sever his trial from that of a codefendant, asserting that the codefendant would testify on the defendant's behalf.[38] The court declined to sever the cases, and neither defendant ultimately testified. After conviction, the defendant moved for a new trial, asserting newly discovered evidence in the form of exculpatory affidavits by his codefendant, that were created after trial. The Fifth Circuit affirmed the trial court's denial of the motion, holding that the contents of the affidavit may have been "newly *available*" but were not "newly *discovered*":

> [I]t is apparent that Metz has not cleared the hurdle of showing that the evidence was unknown to him at the time of trial. In an affidavit dated August 15, 1980, attached to the present motion for a new trial, Metz's former trial counsel, William Moran, avers that the entire substance of Schiller's affidavit [the codefendant] is consistent with what Schiller and/or Schiller's counsel had relayed to him prior to their trial in August 1978. Moran alleges that the specific details and facts in Schiller's affidavit were disclosed to him in confidence, but that he was precluded from revealing the information absent a granting of severance. Clearly, this evidence cannot be considered "newly discovered." Even though Schiller may have been unavailable to testify at their joint trial because he invoked the Fifth Amendment, Metz himself was not precluded from testifying in his own behalf that he (i) knew nothing of the conspiracy, (ii) was unaware of the presence of cocaine

---

[37] *United States v. Lopez*, 979 F.2d 1024, 1036 (5th Cir. 1992) (citing *United States v. Alvarado*, 898 F.2d 987, 994 (5th Cir.1990)).
[38] *United States v. Metz*, 652 F.2d 478, 480-81 (5th Cir.1981).

in his residence, and (iii) was not at his residence on December 14, 1977, at the time of Schiller's visits.[39]

Like the appellant in *Metz*, Hawthorne could have testified as to the contents of the Affidavit—that he did not engage in illicit drug activity with Mitchell— himself. Moreover, as the government points out, other courts have similarly rejected post-trial affidavits as grounds for a new trial under similar circumstances.[40]

The Court agrees with the government that Hawthorne's reliance on *Montilla-Rivera* is misplaced. In *Montilla-Rivera* the First Circuit followed its precedent that "exculpatory affidavits from codefendants who did not testify at trial because they exercised their Fifth Amendment privileges may … qualify as 'newly discovered' evidence" for purposes of a new trial.[41] But the court noted that the Fifth Circuit was among "[m]ost other circuits" in having "expressed hostility to this notion … on the ground that the defendant was aware of the potential testimony at trial, even if that testimony was unavailable due to assertions of privilege."[42] In sum, Hawthorne has not met his burden of establishing the first two *Berry* factors.

Assuming, *arguendo*, that Hawthorne had satisfied the first two Berry factors, he cannot satisfy the last two *Berry* factors—that the Affidavit be both "material" and likely to produce an acquittal if offered at a new trial. Materiality requires that the new evidence either "greatly strengthen the defense's case" or "put the whole case in such a different light as to undermine confidence in the verdict."[43] The Affidavit does neither. As the government notes, if the Affidavit

---

[39] *Id.*
[40] *See, e.g., United States v. Hendrix*, 482 F.3d 962, 967 (7th Cir. 2007); *United States v. Diggs*, 649 F.2d 731, 740 (9th Cir. 1981) ("When a defendant who has chosen not to testify comes forward to offer testimony exculpating a codefendant, the evidence is not 'newly discovered.'").
[41] 115 F.3d at 1065–66 (1st Cir. 1997).
[42] *Id.* (citing *Metz*, 652 F.2d at 480-81).
[43] *United States v. Owings*, No. CR 18-120, 2021 WL 1723544, at *5 (W.D. La. Apr. 30, 2021), *aff'd*, No. 21-30279, 2022 WL 414288 (5th Cir. Feb. 10, 2022)(citing *United States v. Piazza*, 647 F.3d 559, 569 (5th Cir. 2011); *United States v. Sipe*, 388 F.3d 471, 478 (5th Cir. 2004)).

were offered at a second trial, it would be subject to impeachment by Mitchell's own statements to the undercover officer who purchased fentanyl from her and to other law enforcement agents. The Affidavit would also be impeachable by the factual stipulation Mitchell agreed to in open court when her plea deal was accepted. Because the Affidavit directly contradicts the factual stipulation and essentially recants her statements to the government and law enforcement as to Hawthorne's role in the conspiracy, the Affidavit is inherently suspect.[44] Furthermore, Mitchell's statements were not the only evidence implicating Hawthorne. The trial record includes testimony by law enforcement describing what they observed as they watched the interactions between Mitchell, Hawthorne, and other members of the conspiracy. The trial record also includes video and audio recordings of Mitchell's interaction with Hawthorne. In sum, Mitchell's contradictory statements in her post-trial Affidavit would likely cast doubt on Mitchell's credibility on the stand rather than exonerate Hawthorne.[45] Given the totality of the evidence in the trial record, the Court cannot conclude that the exculpatory statements in the Affidavit, if admitted at trial, would likely result in an acquittal.

In *United States v. Rodriguez-Marrero*,[46] one of the defendants in a drug conspiracy (Genao) sought a new trial on the basis of sworn statements offered by two co-defendants (Peña and Valle-Lassalle), and an interview of a third codefendant (Santodomingo) by a private investigator.[47] All of the statements purported to exculpate Genao, and all were given after trial and after Peña, Valle-Lassalle, and Santodomingo had already been sentenced.[48] The First Circuit

---

[44] *Neal*, 78 F.4th at 788–89.
[45] *See, e.g., United States v. Huntsberry*, No. CR 17-331-02, 2021 WL 2457648, at *4 (W.D. La. June 15, 2021).
[46] 390 F.3d 1 (1st Cir. 2004).
[47] *Id.* at 14.
[48] *Id.* at 14.

upheld denial of the motion for new trial because the statements did not meet the *Berry* test.[49] At an evidentiary hearing, Peña acknowledged that his post-trial statement contradicted the factual stipulation of his plea bargain.[50] Valle-Lassalle affirmed at the hearing that he refused to implicate anyone who was "not a cooperator or a dead person."[51] Santodomingo's statement was merely that Genao "did not do any drug work for" Santodomingo.[52] The First Circuit held the trial court, having presided over the trial and the hearing, and considering the "limitations" of the post-trial statements, was within its discretion to find the post-trial statements would not "probably result in an acquittal upon retrial."[53] The similarities to the Affidavit here are clear. The fact that the First Circuit—whose precedent allows codefendants' exculpatory affidavits to be considered new evidence—would find such an affidavit insufficient to justify a new trial further shows that Hawthorne has not carried his burden.

Considering all of the evidence adduced at trial, as well as the contents of Mitchell's factual stipulation and the Affidavit, the Court finds that the Affidavit does not satisfy all of the *Berry* factors, and thus does not support Hawthorne's request for a new trial.

## IV.
### CONCLUSION

For the reasons set forth above, the Motion for New Trial [ECF No. 134] is DENIED.

THUS DONE AND SIGNED in Lafayette, Louisiana, this 22th day of January, 2024.

*[signature]*

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

---

[49] *Id.* at 14-15. The court in *Rodriguez-Marrero* analyzed the factors of the test set out in *United States v. Wright*, 625 F.2d 1017, 1019 (1st Cir. 1980). While the factors of that test are stated differently than the *Berry* test, they are substantively identical. *Id.*
[50] *Id.*
[51] *Id.* at 15.
[52] *Id.*
[53] *Id.* (quoting First Circuit *Wright*, 625 F.2d at 1019).